Evans V. Brewster, S.
This is an intermediate trustee’s accounting which covers a period from November, 1952 to November 22, 1972, the date of death of the sole trustee. The petitioner is the daughter of the deceased trustee, the executrix of her estate, as well as a successor cotrustee and a present income-beneficiary of the trust accounted for. Her brother, who is also a successor cotrustee and a present income beneficiary of the trust, has filed objections to the account. He is joined in these objections by two of his children, who are contingent remaindermen of the trust. The objectants have appeared in this proceeding pro se.
Basically, the objections are two-fold: First, the objectants seek a determination that certain invasions of principal made by the deceased trustee for her own benefit were improper, by reason of which her estate should be surcharged and the amount of these invasions restored to the trust. Second, they object to the legal fee requested by the firms of attorneys for the accounting party.
Decedent died on August 6, 1952 leaving a last will and testament and a codicil thereto which was admitted to probate on October 7, 1952. In Article fourth of his will, as amended by the codicil, testator directed that his residuary estate be held in trust during the joint lives of his wife, Alice B. Warfield, and his sister, Ruth H. Warfield, and designated them as cotrustees thereof. He further directed that the income be paid to his wife during her lifetime and upon her death, during the continuance of the trust, the income was to be paid to his children, the petitioner and objectant herein. Upon the termination of the trust, the corpus thereof was payable to his issue per stirpes.
Ruth H. Warfield renounced her right to letters of trusteeship and Alice B. Warfield, the surviving spouse, became the sole trustee and served as such until her death on November 22, 1972. Ruth H. Warfield, whose life now measures the term of the trust, is still living and thus the trust continues, with *901 the income thereof now payable to testator’s daughter, the petitioner, and to his stepson, the objectant.
With respect to the objection addressed to the invasion of principal, Schedule "D” of the account states: "In reconstructing the account of the deceased trustee, it is impossible to determine when distributions of principal were made by the trustee to herself * * * It is obvious the account will only balance if we assume total principal distributions to the trustee-beneficiary of $35,188.37.” In his objections to the account, the objectant, at page 5, states: "The executrix represents that the amount of the invasion of the GHW trust was $35,188.37. The Co-trustee will accept this figure as accurate.” Accordingly, the amount of the principal invasion is not in dispute, but only the propriety thereof.
Article fourth of the will in pertinent part states: "I further give to my said trustees the fullest power and discretion from time to time in their absolute judgment to encroach upon the corpus of said trust funds and the obligation so to encroach for supporting my wife with what she may deem to be requisite for her support” (emphasis added).
EPTL 10-10.1 which is a re-enactment of former section 159 of the Real Property Law, which in turn had its genesis in former section 141 of the Real Property Law, states: "A power conferred upon a person in his capacity as trustee of an express trust to make discretionary distribution of either principal or income to himself * * * cannot be exercised by him. If the power is conferred on two or more trustees, it may be executed by the trustees who are not so disqualified. If there is no trustee qualified to execute the power, its execution devolves on the supreme court, except that if the power is created by will, its execution devolves on the surrogate’s court having jurisdiction of the estate of the donor of the power.” (Emphasis added.)
The initial question posed is whether the language used in Article fourth of the will granted the widow an absolute and unqualified right of invasion of the trust principal or whether all trust invasions are solely within the discretion of the trustee.
In construing the will of a decedent, the court is required to determine and give effect to the intent and purposes of the testator and all rules of construction are subordinate thereto (Matter of Fabbri, 2 NY2d 236). The language used by the testator is clear and his intention and primary purpose to *902 provide for his wife is unmistakable. The tenor of the entire will manifests an intention to make the entire trust, both principal and income, available for her use and benefit.
Under the terms of his will, decedent provided for two distinct and independent methods by which invasions of trust principal could be made. In the first instance, he granted his trustees the power to make invasions in their discretion irrespective of any request by the wife. In the second method, he granted his wife as beneficiary the power to encroach upon the principal of the trust in such amounts as "she may deem to be requisite for her support.”
In Matter of Woollard (295 NY 390, 391), the testator created a trust of his residuary estate for the benefit of his wife and directed the trustees to apply the income thereof to the use of his wife "together with as much of the principal * * * as she may deem necessary for her maintenance comfort and well being”. In construing his quoted portion of the will, the court held that the widow had the right to demand payment from principal whenever she deemed it necessary for her maintenance, comfort and well-being. Upon her demand for a principal invasion, the trustees were obligated to comply therewith. The court stated (p 394) that "under the terms of the particular will no one may question or go behind such a determination and expression by her.”
The court finds that the language employed by the testator herein evidences his intent to give his wife the absolute and uncontrolled right to demand an invasion of the trust principal (Matter of Woollard, supra; Matter of Bisconti, 306 NY 442; Matter of Nathan, 17 Misc 2d 822). The amount to which she is entitled depended solely upon her own desires without a requirement to state why and for what she wanted the money. Whenever the wife deemed such an invasion "to be requisite for her support”, the trustees were under an "obligation so to encroach”. Any other interpretation would do violence to the clearly expressed intention of the testator.
Where discretion of the trustee is not involved, EPTL 10-10.1 has no application to payments from principal. Any discussion therefore, with reference to that portion of EPTL 10-10.1 which provides that the power to invade principal devolves upon the court where the beneficiary vested with the power is the sole trustee or where there is no trustee, would be purely academic. The right to invade principal in the instant case is given to the wife as beneficiary and not in her *903 capacity as a trustee. No rule of public policy prevents a testator from giving such a right to a beneficiary (Matter of Solinger, 4 Misc 2d 79).
In the light of the above determination, it is apparent that if an independent trustee had been serving along with the deceased trustee-beneficiary, any objection addressed to improper invasions of principal would be dismissed once the court determined that the beneficiary could call for principal invasions at her pleasure, which invasions the trustee was obligated to honor. It is likewise apparent that if during the period of the deceased trustee’s administration, she had instituted a proceeding pursuant to EPTL 10-10.1 to obtain the court’s sanction for invasions she deemed "requisite for her support”, the court would have been obliged to authorize the requested invasions. In addition, to facilitate the administration of the trust and effectuate the intention of the testator, the court would have appointed a cotrustee to serve in conjunction with the trustee-beneficiary.
Accordingly, after a consideration of all the circumstances, and the facts adduced at the hearing, such as the widow’s accustomed standard of living prior to the death of her husband, her financial circumstances, the estimated dates and amounts of principal invasions (which are not controverted), the intent of the testator and the obligation imposed upon the trustee "to encroach” upon principal by the terms of the will, the court determines that the principal invasions in the amount of $35,188.37 as reflected in Schedule "D” of the account were authorized by the will and accordingly are ratified and approved. The objections addressed thereto are dismissed.
The court has carefully reviewed the affidavit of legal services submitted by the firm of attorneys for the accounting party, the account of proceeding and all papers submitted in support as well as those in opposition to the requested legal fee. After considering the time and labor required, the difficulties involved in preparing the account, the experience, ability and reputation of the firm of attorneys and all other factors relevant in the fixation of legal fees (Matter of Freeman, 34 NY2d 1; Matter of Snell, 17 AD2d 490; Matter of Potts, 213 App Div 59, affd 241 NY 593), the court determines that the fair and reasonable value of the legal services inclusive of services through settlement of the decree to be made herein is the sum of $2,750. Itemized disbursements in the amount of *904 $383.40 are approved and allowed. Proper additional disbursements may be taxed as costs.
No proof was adduced at the hearing to show that the deceased trustee acted imprudently in the investment of trust assets or that she acted in an illegal or improper manner in her administration of the trust. Accordingly, the objections with respect to the losses suffered during the period covered by the account, as well as all objections addressed to the trustee’s administration of the trust, are dismissed.
Sufficient proof having been submitted, the claim of the estate of the deceased trustee in the sum of $1,631.64, as set forth in Schedule "C-l” of the account, for reimbursement of expenses paid in connection with the administration of the trust accounted for is approved and allowed.